**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | |
| | : | |
| **Defendant.** | : | |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE

At all times material to this Information:

1.      Cirrus Electronics ("Cirrus") was in the business of acquiring electronics components in the United States and exporting them to Government of India enterprises in India. It did business as Cirrus Electronics LLC ("Cirrus U.S.A."), with offices at 201 Huddersfield Drive and 22 Redglobe Court, Simpsonville, South Carolina; Cirrus Electronics Pte Ltd. ("Cirrus Singapore"), with an office at Level 3, ECON Building, No. 2, Ang Mo Kio Street 64, Ang Mo Kio Industrial Park 3, Singapore; and Cirrus Electronics Marketing (P) Ltd. ("Cirrus India"), with an office at #303, Suraj Ganga Arcade, 332/7, 15th Cross 2nd Block, Jayanagar, Bangalore, India.

2.      Cirrus maintained a website at www.cirruselectronics.com.  The website contained photographs of rocket launchers and fighter aircraft.  It stated that "Cirrus not only specializes in sourcing MIL [military] components that are marked discontinued by the original manufacturer but also acts as one stop distributors for all generic and military grade electronic

and electro mechanical components from world wide sources."

3.       Defendant, **PARTHASARATHY SUDARSHAN**, founded Cirrus in Singapore in 1997.  He held himself out to be Cirrus' CEO, Managing Director, and President and Group Head.  In or around December 2004, he moved from Singapore to the United States and, while residing lawfully in the United States, worked out of Cirrus U.S.A.'s offices in Simpsonville, South Carolina.

4.       Co-conspirator Mythili Gopal**,** a lawful permanent resident of the United States, was Cirrus' International Sales Manager.  In or around November 2003, she opened Cirrus U.S.A. in Simpsonville, South Carolina.

5.       Co-conspirator AKN Prasad formally opened Cirrus India in Bangalore in or around August 2004 and was CEO of India Operations.

6.       Co-conspirator Sampath Sundar was Cirrus' Director of Operations and worked principally out of Cirrus Singapore's office.

7.       Co-conspirator S.K. was Director of Marketing for Cirrus India.

8.       Co-conspirator G.S. was a Marketing Manager for Cirrus India.

9.       The United States Department of Commerce, located in the District of Columbia, was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries.  The Export Administration Act ("EAA"), 50 U.S.C. App. §§ 2101-2420, authorized the Department of Commerce to prohibit or curtail the export of any goods and technology as necessary, to protect, among other things, the national security and foreign policy of the United States.  The Department of Commerce implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774.  Although the

EAA had lapsed, the EAR continued to be in effect under the provisions of the International

Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, and by virtue of

Executive Order 13222 (August 17, 2001), as extended by successive Presidential notices.

10.    The Department of Commerce authorized the exportation of goods and

technology to restricted countries and foreign end-users through the issuance of a license.  Any

export of goods from the United States to a restricted country or foreign end-user without such a

license was a violation of the EAR.

11.    Supplement No. 4 to Part 744 of the EAR contained a list (hereinafter the "Entity

List") that included certain Indian government, quasi-governmental, and private entities that the

Department of Commerce determined to be involved in nuclear or missile activities.   These

activities posed a risk to the foreign policy and national security of the United States because of

their significance for nuclear explosive purposes and for the delivery of nuclear devices.

Pursuant to the EAR, the Department of Commerce ordinarily required individuals and

companies seeking to export goods from the United States to consignees on the Entity List first

to obtain a license from the Department of Commerce in the District of Columbia.

12.    The Vikram Sarabhai Space Centre ("VSSC") was within the Department of

Space of the Government of India.  It was responsible for the research, development, and

production of the Government of India's space launch vehicles.  These activities encompassed

both civilian spacecraft and ballistic missiles.  VSSC was on the Entity List.

13.    Bharat Dynamics Ltd. ("BDL") was within the Ministry of Defence of the

Government of India.  The Indian Ministry of Defence had formed BDL in 1970 for the

production of guided missiles and related defense equipment.  It was the prime production

agency for missile weaponry systems under India's Integrated Guided Missile Program. BDL was on the Entity List.

14.    The WS512K32N-17H1QA and WS512K32N-17H1IA were Static Random Access Memory computer chips ("SRAMs") manufactured by a company in Phoenix, Arizona. They were designed to withstand extreme changes in temperature and had applications in missile guidance systems. The Department of Commerce required a license for the export of the WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs to VSSC.

15.    The 5962-9461110HTA was an SRAM that was manufactured by a company in Austin, Texas, and that was equivalent to both the WS512K32N-17H1QA and the WS512K32N-17H1IA SRAMs. The 5962-9560004MXA was another SRAM that the company in Austin, Texas, manufactured. The Department of Commerce required a license for the export of the 5962-9461110HTA and the 5962-9560004MXA SRAMs to VSSC.

16.    MHF+2805S/883 DC-DC converters, MHF+2815D/883 DC-DC converters, and FM-704A EMI filters were manufactured by a company in Redmond, Washington. The Department of Commerce required a license for the export of the MHF+2805S/883 DC-DC converters, MHF+2815D/883 DC-DC converters, and FM-704A EMI filters to VSSC.

17.    The T110C475K100AS was a capacitor. Capacitors stored and discharged electrical current and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the T110C475K100AS to BDL.

18.    The CD4043BF3A was a semi-conductor and had applications in missile guidance and firing systems. The Department of Commerce required a license for the export of the CD4043BFA to BDL.

19.    The JAN1N3611 was a rectifier.  Rectifiers changed alternating current to direct current and had applications in missile guidance and firing systems.  The Department of Commerce required a license for the export of the JAN1N3611 to BDL.

20.    The M8340109K6801GC was a resistor.  Resistors regulated the flow of electric current and had applications in missile guidance and firing systems.  The Department of Commerce required a license for the export of the M8340109K6801GC to BDL.

21.    The Tejas Light Combat Aircraft was an advanced fighter jet that the Government of India was developing.

22.    The Aeronautical Development Establishment ("ADE") was an enterprise within the Government of India Ministry of Defence and was responsible for developing the Tejas Light Combat Aircraft.

23.    Hindustan Aeronautics, Ltd. ("HAL") was an enterprise within the Government of India Ministry of Defence and was responsible, among other things, for manufacturing military aircraft.

24.    Co-Conspirator A was a Government of India official located in the District of Columbia.

25.    The export of certain items and services, known as defense articles and services, was governed by the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130.  These items or services were set forth in and constituted the United States Munitions List ("Munitions List") codified at 22 C.F.R. § 121.1.  Pursuant to Section 2778(b)(2) of AECA, no defense article and services designated by the President of the United States under the statute and regulations cited

above could be exported without a license issued in accordance with AECA and the ITAR.  The United States Department of State, Directorate of Defense Trade Controls ("DDTC"), located in the District of Columbia, had responsibility for issuing licenses for the export of defense items and services.  In addition, exporters in the United States of defense items and services were required to register with DDTC.

26.     The i960MC Intel Microprocessor (Standard Military Design Number 5962-9094603MYA) ("i960MC microprocessor") was manufactured by a vendor in Newburyport, Massachusetts, under license from Intel.  The i960MC microprocessor was specifically designed for military applications and was used in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.  The i960MC microprocessor was a defense article on the Munitions List and could not be exported from the United States to India without the exporter first obtaining a license from the DDTC.

27.     The M39014/01-1284, the M39014/01-1299, the M39014/01-1317, the M39014/01-1535, and the M39014/01-1553 were capacitors and were specifically designed for military applications.  These items were defense articles on the Munitions List and could not be exported from the United States to India without the exporter first obtaining a license from the DDTC.

28.     The F1419-2G-30702-S was a night vision filter manufactured and sold by a company in Fountain Valley, California.  It was a defense article on the Munitions List and could not be exported from the United States to India without the exporter first obtaining a license from the DDTC.

## The Conspiracy

29.     Beginning in or around October 2002 and continuing through in or around September 2006, within the District of Columbia and elsewhere, the defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirators Mythili Gopal, AKN Prasad, Sampath Sundar, and others known and unknown to the United States Attorney, knowingly combined, conspired, confederated, and agreed with each other (1) to violate IEEPA and the EAR by exporting critical electronic components to Entity List organizations in India without first obtaining licenses from the Department of Commerce, located in the District of Columbia; and (2) to violate AECA and the ITAR by exporting defense articles on the Munitions List to India without first obtaining licenses from the Directorate of Defense Trade Controls, located in the District of Columbia.

## Objects of the Conspiracy

30.     The objects of the conspiracy were:

    a.     to make money for Cirrus and its owners and employees;

    b.     to supply Government of India enterprises on the Entity List with critical electronic components needed in the production of missiles and missile launch vehicles;

    c.     to supply ADE with a critical component in the navigation and weapons guidance systems of the Government of India's Tejas Light Combat Aircraft;

    d.     to supply HAL with night vision filters for use in combat aircraft;

    e.     to evade the prohibitions and licensing requirements of IEEPA and the EAR and of AECA and the ITAR; and

    f.     to conceal the prohibited transactions from detection by the United States

government so as to avoid penalties.

## Manner and Means of the Conspiracy

31.    The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

a.    Cirrus received orders from Entity List organizations in India for U.S. origin electronic components that these organizations were restricted from receiving pursuant to the EAR;

b.    Defendant, **PARTHASARATHY SUDARSHAN,** and co-conspirators Mythili Gopal and Sampath Sundar contacted vendors in the United States and negotiated purchases of the electronic components on behalf of the Indian Entity List organizations;

c.    Co-conspirator AKN Prasad served as the liaison between Cirrus and the Entity List organizations in India;

d.    Defendant, **PARTHASARATHY SUDARSHAN** and co-conspirator Sampath Sundar provided false end-user certificates to certain vendors that concealed the fact that an Indian Entity List organization was the true recipient of the products;

e.    In order to conceal from the United States government that electronic components were being exported to Entity List organizations in India, defendant, **PARTHASARATHY SUDARSHAN,** and co-conspirators Mythili Gopal and Sampath Sundar caused certain vendors in the United States to ship the components to Cirrus Singapore.  Upon arrival of the commodities in Singapore, Cirrus Singapore re-exported them to the Entity List customers in India;

f.    When vendors in the United States did not inquire whether Cirrus U.S.A.

was purchasing electronic components for export, defendant, **PARTHASARATHY**

**SUDARSHAN,** and co-conspirators Mythili Gopal and Sampath Sundar refrained from

revealing the true destination of the products and caused those vendors to ship their goods to

Cirrus U.S.A. in Simpsonville, South Carolina, so as further to conceal from the United States

government that electronic components were being exported to Entity List organizations in

India. After the products arrived in South Carolina, co-conspirator Mythili Gopal and others

associated with Cirrus U.S.A. repackaged the goods and shipped them to Cirrus Singapore.

Upon arrival of the items in Singapore, Cirrus Singapore re-exported them to Entity List

customers in India.

       g.      No export licenses were obtained from the Department of Commerce in

the District of Columbia for exports of electronic components to Entity List organizations in

India.

       h.      Defendant, **PARTHASARATHY SUDARSHAN** met in India with

officials from the Ministry of Defence and ADE and coordinated the acquisition of 500 i960

microprocessors for the Tejas Light Combat Aircraft.

       I.      Defendant, **PARTHASARATHY SUDARSHAN** and co-conspirator

Sampath Sundar communicated and negotiated with a vendor in Newburyport, Massachusetts, in

order to arrange the purchase of 500 i960MC microprocessors for export to ADE for use in the

navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

       j.      In arranging for the purchase of the 500 i960MC microprocessors for

ADE, defendant, **PARTHASARATHY SUDARSHAN** and co-conspirator Mythili Gopal

coordinated with and took directions from Co-Conspirator A, a Government of India official

located in the District of Columbia.

k.    In arranging for the purchase of the 500 i960MC microprocessors for ADE, defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Mythili Gopal coordinated with and took directions from officials with ADE in India.

l.    Co-conspirator AKN Prasad served as a liaison between Cirrus and ADE in India.

m.    Defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirators Mythili Gopal, Sampath Sundar, and AKN Prasad also acquired defense articles on the United States Munitions List for export to VSSC.

n.    In order to conceal from the United States government that the i960MC microprocessors were being exported to ADE in India, Defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Sampath Sundar caused the vendor in Newburyport, Massachusetts, to ship the items to Cirrus Singapore.  Upon arrival of the goods in Singapore, Cirrus Singapore re-exported them to ADE in India.

o.    In order to conceal from the United States government that Cirrus was acquiring defense articles on the United States Munitions List for VSSC, defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Mythili Gopal caused a vendor in Pompano Beach, Florida, to ship its products to Cirrus U.S.A. in Simpsonville, South Carolina. After the products arrived in South Carolina, co-conspirator Mythili Gopal, and others associated with Cirrus U.S.A. repackaged the goods and shipped them to Cirrus Singapore.  Upon arrival of the items in Singapore, Cirrus Singapore re-exported them to VSSC in India.

p.    Cirrus U.S.A. did not register with the Directorate of Defense Trade

Controls in the District of Columbia as an exporter of defense articles on the United States

Munitions List.

q.    No export licenses were obtained from the Directorate of Defense Trade

Controls in the District of Columbia for exports of defense articles on the United States

Munitions List to ADE and VSSC in India.

### Overt Acts

32.    In furtherance of this conspiracy, defendant, **PARTHASARATHY**

**SUDARSHAN**, and co-conspirators Mythili Gopal, AKN Prasad, and Sampath Sundar, and

other co-conspirators committed overt acts, including but not limited to the following:

(1)    On or about December 3, 2002, defendant, **PARTHASARATHY**

**SUDARSHAN**, and Sampath Sundar faxed a Request for Quotation for 10 WS512K32N-

17H1QA SRAMs to a vendor in Phoenix Arizona.  The Cirrus customer on whose behalf they

were seeking the price quotation was VSSC.

(2)    On or about March 20, 2003, defendant, **PARTHASARATHY**

**SUDARSHAN**, and co-conspirator Sampath Sundar caused a vendor in Phoenix, Arizona, to

ship 25 5962-9560004MXA SRAMs to Cirrus Singapore.  Defendant, **PARTHASARATHY**

**SUDARSHAN**, and co-conspirator Sampath Sundar further caused the vendor not to obtain a

license from the Department of Commerce in the District of Columbia for this export by

concealing from the vendor that VSSC was the ultimate consignee for the 25 SRAMs.

(3)    On or about May 7, 2003, in response to an e-mail from a vendor in

Phoenix, Arizona, requesting an end use statement for the 10 WS512K32N-17H1QA SRAMs

described in Overt Act No. 1, co-conspirator Sampath Sundar sent an e-mail to the vendor that

contained as an attachment an end-use statement falsely identifying the end-user of the SRAMs as the "Naval Physical & Oceanographic Laboratory" ("NPOL") in Kochi, India, and the end use as "for the development of electronic hardware for oceanographic instrument measuring the ocean parameters for our own use."

(4)    On or about May 23, 2003, defendant, **PARTHASARATHY SUDARSHAN**, and Sampath Sundar caused a vendor in Phoenix, Arizona, to ship 10 WS512K32N-17H1QA SRAMs to Cirrus Singapore.  Defendant, **PARTHASARATHY SUDARSHAN**, and Sampath Sundar further caused the vendor not to obtain a license from the Department of Commerce in the District of Columbia for this export by concealing from the vendor that VSSC in India was the ultimate consignee of the 10 SRAMs.

(5)    On or about June 12, 2003, defendant, **PARTHASARATHY SUDARSHAN**, sent an e-mail to a vendor in Newburyport, Massachusetts, enclosing a purchase order from Cirrus for 254 i960MC microprocessors.

(6)    On or about August 10, 2003, defendant, **PARTHASARATHY SUDARSHAN**, provided an end-use certificate to a vendor in Redmond, Washington, that falsely claimed that Cirrus Singapore would be the ultimate consignee of MHF+2805S/883 DC-DC converters, MHF+2815D/883 DC-DC converters, and FM-704A EMI filters when, in fact, Cirrus was acquiring the items for VSSC.

(7)    On or about August 15, 2003, defendant, **PARTHASARATHY SUDARSHAN**, after being informed by a vendor in Phoenix, Arizona, that any export of a particular model of SRAMs to VSSC required a license from the Department of Commerce, sent an e-mail to the vendor in which he falsely represented as follows:

We will also inform and impose the same condition to our customers. If the license is not approved, neither you nor cirrus will have any bearing on the order. This condition is also imposed as the part of the quote.

Mostly customers like VSSC are fully aware of the licensing situation.

You may send us your bid and repeat . . . the order from us can be accepted only upon the license. The delivery from your end start only from the license.

(8)     On or about August 18, 2003, co-conspirator Sampath Sundar faxed a purchase order to a vendor in Phoenix, Arizona, for 10 additional WS512K32N-17H1QA SRAMs and included an end-user statement that falsely claimed that the end-user was NPOL when, in fact, Cirrus was acquiring the SRAMs on behalf of VSSC.

(9)     On or about September 27, 2003, defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Sampath Sundar caused a vendor in Phoenix, Arizona, to ship 10 WS512K32N-17H1QA SRAMs to Cirrus Singapore. Defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Sampath Sundar further caused the vendor not to obtain a license from the Department of Commerce in the District of Columbia for this export by concealing from the vendor that VSSC in India was the ultimate consignee of the 10 SRAMs.

(10)     On or about September 29, 2003, defendant, **PARTHASARATHY SUDARSHAN**, traveled to Newburyport, Massachusetts, to meet with representatives of the vendor of the i960MC microprocessors and to discuss an upcoming visit to the vendor with Co-Conspirator A during which **SUDARSHAN** and Co-Conspirator A would observe testing of the i960MC microprocessors.

(11)     On or about October 24, 2003, defendant, **PARTHASARATHY SUDARSHAN**, caused a vendor in Redmond, Washington, to ship 5 MHF+2805S/883 DC-DC converters, 20 MHF+2815D/883 DC-DC converters, and 12 FM-704A EMI filters to Cirrus

Singapore.  Defendant, **PARATHASARATHY SUDARSHAN**,  further caused the vendor not

to obtain a license from the Department of Commerce in the District of Columbia for this export

by concealing from the vendor that VSSC in India was the ultimate consignee of these items.

(12)     On or about November 19, 2003, co-conspirator Mythili Gopal

incorporated Cirrus U.S.A. in the State of South Carolina.

(13)     On or about January 28, 2004, defendant, **PARTHASARATHY

SUDARSHAN**, sent an e-mail to Co-Conspirator A in the District of Columbia in which he

introduced himself and Cirrus to Co-Conspirator A and discussed arrangements for their visit to

the vendor in Newburyport, Massachusetts, to observe the testing of the i960MC

microprocessors.

(14)     Between on or about February 15, 2004, and on or about February 20,

2004, defendant, **PARTHASARATHY SUDARSHAN**, and Co-Conspirator A traveled to the

vendor in Newburyport, Massachusetts, and observed the testing of the i960MC

microprocessors.

(15)     On or about February 16, 2004, after learning from a vendor in Fountain

Valley, California, that the F1419-2G-30702-S night vision filters required a license from the

State Department for export to India, defendant, **PARTHASARATHY SUDARSHAN**, directed

co-conspirator Mythili Gopal to request that a business associate in Hudson, Florida, place the

identical order for the night vision filters with the vendor and then ship the items after receiving

them to Cirrus in South Carolina.

(16)     On or about February 24, 2004, defendant, **PARTHASARATHY

SUDARSHAN**, sent a facsimile to Co-Conspirator A in the District of Columbia in which he

wrote the following concerning the export of the i960MC microprocessor to ADE in India:

> On Shipment: The shipment is leaving for Singapore, as we do not want it to be held up at US customs for want of business registration and export code numbers etc.,
>
> It was advised by many that it would be far better to get them shipped out from Singapore.

(17)    On or about February 26, 2004, defendant, **PARTHASARATHY SUDARSHAN**, sent an e-mail to a representative of the vendor of the F1419-2G-30702-S night vision filters in Fountain Valley, California, requesting:

> We appreciate if you could help us with at least some 50-100 nos of this item so that everyone is out of the woods.  If not, if your shipment is further delayed, it may smack the proverb of "Operation success; but Patient died".
>
> If [my customer] is unable to complete his production on time, he is dead by then.

(18)    On or about February 28, 2004, defendant, **PARTHASARATHY SUDARSHAN**, caused a vendor in Newburyport, Massachusetts, to ship 377 i960MC microprocessors to Cirrus Singapore.  Defendant, **PARTHASARATHY SUDARSHAN**, further caused the vendor not to obtain a license from the Directorate of Defense Trade Controls in the District of Columbia for this export by concealing from the vendor that the true end-user was ADE in India and that the true end-use was in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft.

(19)    On or about March 2, 2004, defendant, **PARTHASARATHY SUDARSHAN**, sent an e-mail to a business associate in Hudson, Florida, again requesting the associate's assistance in acquiring the 200 F1419-2G-30702-S night vision filters from the vendor in Fountain Valley, California, before the State Department issued a license for their export to India, writing:

My [customer] had been importing this NVG lamps for the past 10 years plus also. We hope that there should not be any problem in export clearance, etc.

But, the best way is: You may invoice it as bulbs or something and may give to our USA office, instead of direct shipment. You may then apply for your export license also. Upon granting of it, you may regularise your invoice to us, if this solution is acceptable to you.

For your service, you may charge us USD 300.00 as we need to solve the production hold up that takes place in our [customer].

(20)     On or about March 16, 2004, defendant, **PARTHASARATHY SUDARSHAN**, sent an e-mail to a business associate in Hudson, Florida, yet again seeking the associate's assistance in acquiring the 200 F1419-2G-30702-S night vision filters from the vendor in Fountain Valley, California, before the State Department issued a license for their export to India, writing:

2) Anyway, you are not going to export to Singapore; You may ship to our USA office only.

3) Besides, you may invoice the part, as per description, instead of part number for time being; Once you get the export license, then you may regularise it at later time by re-issuing or amending the invoice, if needed.

4) We need your help at this crisis hour; We are pleased to pay a service fee of USD 500.00 on this order, as we are paying penalty [sic] to [our customer]. We feel guilty on holding the production of [our customer] also.

(21)     On or about April 2, 2004, defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Sampath Sundar caused a vendor in Phoenix, Arizona, to ship 55 WS512K32N-17H1QA SRAMs to Cirrus Singapore. Defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator Sampath Sundar further caused the vendor not to obtain a license from the Department of Commerce in the District of Columbia for this export by concealing from the vendor that VSSC was the ultimate consignee for the 55 SRAMs.

-16-

(22)    On or about May 20, 2004, co-conspirator Sampath Sundar sent an e-mail to a vendor in Phoenix, Arizona, in response to an inquiry from the vendor about the end-user for the 30 WS512K32N-17H1IA SRAMs for which Cirrus had made a request for a price quotation, in which Sundar falsely stated that:

> The End user is NPOL and the application of use is for the development of electronic hardware for oceanographic instrument measuring the ocean parameters of their own use.

> * * *

> We hope that we have cleared your doubts and we also understand your concern with commerce dept of USA.

> May we seek your quotation now.

The true customer for which Cirrus was seeking to acquire the 30 WS512K32N-17H1IA SRAMs was VSSC.

(23)    On or about September 22, 2004, Cirrus Singapore faxed a purchase order for 30 WS512K32N-17H1IA SRAMs to a vendor in Phoenix, Arizona, and included an end-user statement that falsely stated that NPOL was the end-user when, in fact, Cirrus was acquiring the SRAMs on behalf of VSSC.

(24)    On or about September 30, 2004, after receiving an e-mail from the vendor in Phoenix, Arizona, informing Cirrus that it had discovered that the NPOL end-user statements were fraudulent, that it would no longer do business with Cirrus, and that it was considering reporting Cirrus to the Department of Commerce, defendant, **PARTHASARATHY SUDARSHAN**, advised co-conspirators AKN Prasad and Mythili Gopal as follows:

> 1) On reading the emails from [the representative from the vendor], do not get panic.  At the end of the game, it is I . . . who need to face the music;

> MG: You are not the owner of Cirrus LLC; Members will not be affected . . .  Besides, I

am moving over to USA to take control on such crisis. .  Hence, do not fear about anything. .  It is all business Games and come what may be the results,,, Detach ourselves from the results..  We concentrate on actions only.

2) TO AKN:

New Head ache for New CEO . . . .  Do not worry, if we apply our thoughts in professional way..

The actions are as follows:

a) Please call [co-conspirator S.K.]; You and SK may go to VSSC and explain them that our intention is not to make profit on this order but to service VSSC. .

b) Ascertain if VSSC has got some clout over NPOL....  We need not indulge full details to them..

* * *

d) We meet NPOL also and explain them so that we do not dent our business with them also....

* * *

It is veil threat of [the vendor to go to the Department of Commerce]; There are 1000 such companies and 100,000 complaints..

As mentioned to you earlier, [the Department of Commerce] came to [another Singapore company] to many other distributors in Singapore and just cautioned them only.  In our case, it is not that..

(25)     On or about January 5, 2005, defendant, **PARTHASARATHY SUDARSHAN**, sent a facsimile to a vendor in Elmsdorf, New York, seeking price quotations for equivalent models to the WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs.

(26)     On or about January 28, 2005, co-conspirator AKN Prasad sent an e-mail to an official at VSSC informing him that Cirrus had "identified an exact equivalent to" the WS512K32N-17H1QA and WS512K32N-17H1IA SRAMs.

(27)     On or about February 1, 2005, co-conspirator S.K. sent an e-mail to

defendant, **PARTHASARATHY SUDARSHAN**, and co-conspirator AKN Prasad advising

them that VSSC had accepted the substitute part for the WS512K32N-17H1QA and

WS512K32N-17H1IA SRAMs and that VSSC was instructing Cirrus to procure the parts.

(28)     On or about May 5, 2005, defendant, **PARTHASARATHY**

**SUDARSHAN**, caused Cirrus U.S.A. to ship 50 5962-9461110HTA SRAMs to Cirrus

Singapore for re-export to VSSC in India.  Cirrus U.S.A. did not obtain a license from the

Department of Commerce in the District of Columbia for this export.

(29)     On or about September 6, 2005, BDL sent Cirrus a purchase order for 90

CD4043BF3A semi-conductors.

(30)     On or about September 16, 2005, defendant, **PARTHASARATHY**

**SUDARSHAN**, provided a "Statement of Assurance" to a vendor in Hauppage, New York, from

which Cirrus later acquired parts for BDL.  In the "Statement of Assurance," **SUDARSHAN**

stated:

> We acknowledge that products (or technical data) to be purchased from [the vendor]
> include or may include products which are subject to export control laws and regulations
> of the United States.

He further falsely represented:

> We hereby certify that all sale, transfer, consignment, loan, or donation of products
> and/or technology acquired from [the vendor] made directly or indirectly outside the
> United States are made in full compliance with all applicable export control laws and
> regulations.

(31)     On or about September 16, 2005, co-conspirator AKN Prasad sent

defendant, **PARTHASARATHY SUDARSHAN**, an e-mail concerning an order from BDL for

110 T110C475K100AS capacitors.

(32)     On or about September 30, 2005, defendant, **PARTHASARATHY**

**SUDARSHAN**, caused Cirrus U.S.A. to ship 15 T110C475K100AS capacitors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(33)    On or about October 10, 2005, co-conspirator G.S. sent co-conspirator Sampath Sundar an e-mail in which he stated, "Attached is the new enquiry from BDL for a new project."  Co-conspirator G.S. further informed co-conspirator Sampath Sundar:

One more issue is that, BDL has recvd 15 Nos. of capacitor which we have supplied recently.  However, they require the balance parts also now . . . .

(34)    On or about October 10, 2005, defendant, **PARTHASARATHY SUDARSHAN**, opened an e-mail from a vendor in Elmsford, New York, containing a quote for 30 5962-9560004MXA SRAMs.

(35)    On or about November 5, 2005, defendant, **PARTHASARATHY SUDARSHAN**, caused Cirrus U.S.A. to ship 95 T110C475K100AS capacitors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(36)    On or about November 22, 2005, VSSC sent Cirrus a purchase order for 150 5962-9560004MXA SRAMs and 90 5962-9461110HTA SRAMS.

(37)    On or about November 30, 2005, co-conspirator AKN Prasad sent an e-mail to defendant, **PARTHASARATHY SUDARSHAN**, in which he wrote:

1.    VSSC is now our A+ customer . . . should aim at min $500K to 750K for 2006.

* * *

3.    BDL, new stable customer aded [sic] – $38 K total till date – Look for $75 K for 2006.

-20-

(38)    On or about January 4, 2006, co-conspirator Sampath Sundar sent an e-mail to a vendor in Hauppage, New York, inquiring, among other things, as to the status of an order for 90 CD4043BF3A semi-conductors that Cirrus was acquiring for BDL.

(39)    On or about January 14, 2006, defendant, **PARTHASARATHY SUDARSHAN**, caused Cirrus U.S.A. to ship 90 CD4043BF3A semi-conductors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(40)    On or about February 17, 2006, co-conspirator Sampath Sundar sent an e-mail to a vendor in Pompano Beach, Florida, requesting a price quotation for 110 M8340109K6801GC resistors that Cirrus was acquiring for BDL.

(41)    On or about March 24, 2006, defendant, **PARTHASARATHY SUDARSHAN**, caused Cirrus U.S.A. to ship 30 5962-9560004MXA SRAMs to Cirrus Singapore for re-export to VSSC in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(42)    On or about April 7, 2006, defendant, **PARTHASARATHY SUDARSHAN**, caused Cirrus U.S.A. to ship 200 JAN1N3611 rectifiers and 110 M8340109K6801GC resistors to Cirrus Singapore for re-export to BDL in India.  Cirrus U.S.A. did not obtain a license from the Department of Commerce in the District of Columbia for this export.

(43)    On or about April 17, 2006, defendant, **PARTHASARATHY SUDARSHAN**, caused Cirrus U.S.A. to ship 90 5962-9461110HTA SRAMs and 150 5962-9560004MXA SRAMs to Cirrus Singapore for re-export to VSSC in India.  Cirrus U.S.A. did

not obtain a license from the Department of Commerce in the District of Columbia for this

export.

(44) On or about July 21, 2006, defendant, **PARTHASARATHY**

**SUDARSHAN**, caused Cirrus U.S.A. to ship 30 5962-9560004MXA SRAMs to Cirrus

Singapore for re-export to VSSC in India.  Cirrus U.S.A. did not obtain a license from the

Department of Commerce in the District of Columbia for this export.

(**Conspiracy to Violate the International Emergency Economic Powers Act and the Export Administration Regulations and to Violate the Arms Export Control Act and the International Traffic in Arms Regulations**, in violation of Title 18, United States Code, Section 371.)

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

By:    _____/s/_____
Jay I. Bratt
Assistant United States Attorney
Illinois Bar No. 6187361
National Security Section
555 Fourth Street, NW (Room 11-437)
Washington, D.C.  20530
(202) 353-3602
Jay.Bratt@usdoj.gov


_____/s/_____
Anthony Asuncion
Assistant United States Attorney
D.C. Bar No. 420822
National Security Section
555 Fourth Street, NW (Room 11-844)
Washington, D.C.  20530
(202) 514-6950
Anthony.Asuncion@usdoj.gov