IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 08-037 (RMU) |
| | : | |
| v. | : | |
| | : | |
| PARTHASARATHY SUDARSHAN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

**Introduction**

In his sentencing memorandum, the defendant, Parthasarathy Sudarshan, requests that this Court give him a "time-served" sentence of approximately 15 months. His justification for such a sentence rests in large part on highly misleading characterizations of two key factors under 18 U.S.C. § 3553(a): (1) the nature and circumstances of his crimes and (2) the sentences that others have received for similar conduct. With respect to the former, Sudarshan wrongly suggests that, because the United States has generally good relations with India, the U.S. somehow suffers no national security harms when a defendant, like Sudarshan here, intentionally violates non-proliferation controls meant to thwart India's unregulated nuclear weapons program. To state the proposition is to reject it. As for Sudarshan's descriptions of the sentences in other cases, they are incomplete, often refer to sentences imposed for non-export crimes (such as false statements), and generally fail to disclose whether the defendant violated nuclear non-proliferation controls on the scale that Sudarshan did here. The sentencing range of 45-48 months that the government recommends is reasonable and more closely comports with the sentencing factors enunciated in § 3553(a) than the time-served sentence that Sudarshan asks the Court to adopt.

**Argument**

I. **Whatever the State of Relations between the U.S. and India, the U.S. Continues to Maintain Nuclear Non-Proliferation Controls against Certain Indian Entities, and Violations of Those Controls Are Both Criminal and Serious**

Sudarshan makes the absurd argument that the nature and circumstances of his crimes merit a lenient sentence because "the exports at issue in this case were to companies owned and controlled by the Government of India, which is closely allied with the United States and not a risk to U.S. security." Sudarshan Memorandum ("Mem.") at 3. However, those very companies – such as the Vikram Sarabhai Space Centre ("VSSC") and Bharat Dynamics Ltd. ("BDL") – are ones that the Department of Commerce has determined to be part of India's clandestine nuclear weapons and ballistic missile programs. The U.S. government sanctions against these entities – and the criminal penalties imposed for violations of those sanctions – give lie to Sudarshan's equally bizarre assertion that "the parts sold by Cirrus are within the control of a strategic partner of the United States and will not be used against U.S. interests." Id. at 4. The U.S. government has expressly decided otherwise.

At a number of points in the memorandum, Sudarshan suggests that the commodities that Cirrus procured for the restricted Indian entities were "generally obsolete technology." Id. Although the Cirrus website advertised that the company was skilled at sourcing obsolete parts, there is absolutely no evidence in the record as to which of the parts Cirrus sold were, in fact, obsolete. Many of the parts, such as the Static Random Access Memory ("SRAM") devices that Sudarshan went to great and deceitful lengths to acquire on behalf of VSSC, were state of the art and had important applications in a ballistic missile guidance system. Moreover, Sudarshan has not shown – nor could he – that any of the so-called obsolete parts lacked the ability to perform

critical functions in the deadly end-products that a customer such as VSSC was producing.[1]

Sudarshan also seeks to minimize the seriousness of his crimes by pointing to the "123" agreement between the U.S. and India on peaceful nuclear cooperation and the sharing of civilian nuclear technology.  Id. at 3.  However, as Sudarshan must concede, the 123 agreement does not permit India to evade U.S. export controls in expanding its nuclear weapons and ballistic missile arsenals.  In any event, since the announcement of the "123" agreement last July, India has failed to overcome internal opposition to the deal and ratify the accord.  See, e.g., Nine Scenarios for the Nuclear Endgame, by Siddarth Varadaraja (May 23, 2008), available at http://alternatives-international.net/article2124.html.

Last, Sudarshan seeks to excuse his behavior by noting that Secretary of Defense Robert Gates has promoted increased arms sales to India.  Id. at 4.  But, as this Court knows, the U.S. strictly controls arms exports to safeguard the foreign policy and national security of the United States.  See Arms Export Control Act ("AECA"), 22 U.S.C. § 2778(a)(1).  All future arms sales to India that Secretary Gates envisions would be in compliance with these controls.  Sudarshan, on the other hand, conspired to evade our government's restrictions on the export of military commodities.

All told, there is nothing that mitigates the nature of Sudarshan's conduct.  The nature and circumstances of his crimes strongly support the sentence that the government has proposed to the Court.

---

[1] The government's expert, Jared Du Fresne, did not conclude that the commodities that Sudarshan was exporting were any less effective or critical because newer technologies may exist.

**II.     Sudarshan's Summary of the Sentences in Other Cases Does Not Contain Complete Information Concerning the Nature of the Commodities Involved or the Scope of the Defendants' Conduct; Several of the Cases Do Not Even Involve Convictions for Export Offenses**

Sudarshan's case is unique. The government is unaware of any other export prosecution that involved as massive a number of illegal exports over as long a period of time as occurred here. In addition, this prosecution belongs to the limited class of export prosecutions that consist of violations of both nuclear non-proliferation controls and AECA's restrictions.

The government has not been able to research all of the cases that Sudarshan summarized.[2] However, the government has discovered that at least two of the prosecutions did not even involve violations of the U.S. national security export control regimes. In United States v. Bernard Smith (number 12 on the chart), the defendant was convicted of importing electronic components without paying U.S. Customs anti-dumping duties. There were no national security concerns arising from this offense, and the district court did not use the export Guidelines, §§ 2M5.1 and 2M5.2. Likewise, in United States v. Maine Biological Laboratories (numbers 38-41), the defendants were convicted of violating FDA and USDA regulations governing the exports of vaccines, which in turn were mislabeled. The district court used the fraud Guideline, § 2B1.1, in calculating the defendants' offense levels, and based the adjusted offense levels on the amount of the loss incurred by the unwitting victims of the defendants' fraud.

Several of the cases involved individuals who were convicted of violating 18 U.S.C.

---

[2] As the government's shorter summary demonstrates – see Exhibit 3 to the government's sentencing memorandum – Sudarshan's document is not a complete listing of recent export sentences. It is also impossible to tell from Sudarshan's exhibit which of the defendants received role in the offense enhancements, as Sudarshan has here, or which of them received role in the offense reductions.

§ 1001, which has a base offense level of 6 under § 2B1.1. These matters are <u>United States v. David Tatum</u> (number 1), <u>United States v. Zheng Zhang</u> (number 13), <u>United States v. Stephen Midgely</u> (number 18), and <u>United States v. Everett Hylton</u> (number 19). While these false statements occurred during the course of investigations into export violations, they are distinct and different offenses, and the relevant Guideline appropriately does not take into account any national security concerns.

Last, some of the cases involved purely civilian goods. See <u>United States v. Abed Mehyo</u> (number 1) (biometric time clock which is used to verify employee identities for payroll purposes) and <u>United States v. Khalid Mahmood</u> (number 45)(16 month sentence for conspiring to export heavy equipment fork lift parts to Iran; defendant received a 5K1.1 reduction from Chief Judge Lamberth after testifying both before a grand jury and at trial).

In short, Sudarshan's case falls within the category of the most serious of export violations. It certainly reflects one of the most extensive and long running export schemes ever. A significant sentence, albeit tempered by credit for the cooperation he has provided, is warranted and consistent with the sentences that other serious violators have received.

## **Conclusion**

For the foregoing reasons, the Court should not impose a sentence of time served, but rather should follow the government's recommendation and sentence Sudarshan to a period of

incarceration ranging between 45 to 48 months.

                                    Respectfully submitted,

                                    JEFFREY A. TAYLOR
                                    United States Attorney
                                    D.C. Bar No. 451058

By:                 /s/
                                    JAY I. BRATT
                                    Assistant United States Attorney
                                    Illinois Bar No. 6187361
                                    jay.bratt@usdoj.gov


                                    /s/
                                  ANTHONY ASUNCION
                                  Assistant United States Attorney
                                  D.C. Bar No. 420822
                                  anthony.asuncion@usdoj.gov

                                  National Security Section
                                  555 4th Street, NW – 11th Floor
                                  Washington, D.C.  20530


                                    /s/
                                  CLIFFORD I. RONES
                                  Senior Trial Attorney
                                  Md. Bar No. 8506010284
                                  Counterespionage Section
                                  U.S. Department of Justice
                                  1400 New York Avenue, NW
                                  Washington, D.C. 20530
                                  clifford.rones@usdoj.gov

**Certificate of Service**

     I, Jay I. Bratt, certify that I caused to be served a copy of the foregoing Government's Reply to Defendant's Sentencing Memorandum by electronic means on counsel of record for defendant Sudarshan this 12th day of June, 2008.

                                                                 /s/
                                                Jay I. Bratt